Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT

for the

Northern District of Florida

Panama City Division

| | |
|---|---|
| **MICHEAL L. TOLER JR,** | Case No. 5:22cv110 TKW-MJF |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Jury Trial Demanded |
| **-v-** | |
| **SEC., FLORIDA DEPT. OF CORR'S; WARDEN, S. PAYNE; CHIEF OF SECURITY; JOHN DOE: SMITH; JOHN DOE: BEACH; JONATHAN MULLINS; JANE DOE CARR; G. DYKES, ET AL.** | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)* | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# I.    The Parties to This Complaint

## A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Michael  L. Toler, JR |
| All other names by which you have been known: | |
| ID Number | P21439 |
| Current Institution | HOLMES CORRECTIONAL INST. |
| Address | 3142 THOMAS DR. |
| | BONIFAY     FL     32425 |

| City | State | Zip Code |

## B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Secretary, Florida Department of Corrections |
| Job or Title *(if known)* | |
| Shield Number | |
| Employer | State of Florida |
| Address | 501 S. Calhoun St. |
| | Tallahassee     FL     32054 |

| City | State | Zip Code |

☒ Individual capacity ☒ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | John Doe: S. Payne |
| Job or Title *(if known)* | Warden |
| Shield Number | |
| Employer | Gulf Correctional Institution |
| Address | 500 SRE Steel Road |
| | Wewahitchka     FL     32465 |

| City | State | Zip Code |

☒ Individual capacity ☒ Official capacity

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

**Defendant No. 3**

| | |
|---|---|
| Name | John Doe: Chief Security |
| Job or Title *(if known)* | Chief Security |
| Shield Number | |
| Employer | Gulf Correctional Institutional |
| Address | 500 SRE Steel Rd |

| Wewahitchka | FL | 32465 |
|---|---|---|
| *City* | *State* | *Zip Code* |

☒ Individual capacity    ☒ Official capacity

**Defendant No. 4**

| | |
|---|---|
| Name | John Doe: Smith |
| Job or Title *(if known)* | Correctional Officer |
| Shield Number | |
| Employer | Gulf Correctional Institution |
| Address | 500 SRE Steel Rd. |

| Wewahitchka | FL | 32465 |
|---|---|---|
| *City* | *State* | *Zip Code* |

☒ Individual capacity    ☒ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☒ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

Eighth Amendment to the Federal Constitution (see Addendum 1)

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

**DEFENDANT 5.**

John Doe: Beach
Correctional Officer
Gulf Correctional Institution
500 SRE Steel Rd.
Wewahitchka, FL 32465

☒ OFFCIAL CAPACITY ☒ INDIVIDUAL CAPACITY

**DEFENDANT 6.**

Jonathan Mullins
Correctional Officer
Gulf Correctional Institution
500 SRE Steel Rd.
Wewahitchka, FL 32465

☒ OFFCIAL CAPACITY ☒ INDIVIDUAL CAPACITY

**DEFENDANT 7.**

Jane Doe: Sgt. Carr, L.A. # CIA 40
Correctional Officer
Gulf Correctional Institution
500 SRE Steel Rd.
Wewahitchka, FL 32465

☒ OFFCIAL CAPACITY ☒ INDIVIDUAL CAPACITY

**DEFENDANT 8,**

Gregory Dykes
Correctional Officer
Gulf Correctional Institution
500 SRE Steel Rd.
Wewahitchka, FL 32465

☒ OFFCIAL CAPACITY ☒ INDIVIDUAL CAPACITY

3 (a)

**DEFENDANT 9,**

    John Doe
    Correctional Officer
    Gulf Correctional Institution
    500 SRE Steel Rd.
    Wewahitchka, FL 32465

☒ OFFCIAL CAPACITY ☒ INDIVIDUAL CAPACITY


**DEFENDANT 10,**

    John Doe: Security 9
    Correctional Officer
    Gulf Correctional Institution
    500 SRE  Steel Rd.
    Wewahitchka, FL 32465

☒ OFFCIAL CAPACITY ☒ INDIVIDUAL CAPACITY


**DEFENDANT 11,**

    Jane Doe: P. Osbourne
    RN: Nurse
    Gulf Correctional Institution
    500 SRE  Steel Rd.
    Wewahitchka, FL 32465

☒ OFFCIAL CAPACITY ☒ INDIVIDUAL CAPACITY

3(b)

D.      Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

(See Addendum 1.)

## III.   Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☐   Pretrial detainee

☐   Civilly committed detainee

☐   Immigration detainee

☒   Convicted and sentenced state prisoner

☐   Convicted and sentenced federal prisoner

☐   Other *(explain)* _____

## IV.   Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.      If the events giving rise to your claim arose outside an institution, describe where and when they arose.

(See Addendum 1.)

B.      If the events giving rise to your claim arose in an institution, describe where and when they arose.

(See Addendum 1.)

C.     What date and approximate time did the events giving rise to your claim(s) occur?
       (See Addendum 1.)

_____

D.     What are the facts underlying your claim(s)? *(For example:  What happened to you?  Who did what? Was anyone else involved?  Who else saw what happened?)*
       (See Addendum 1.)

_____

## V.     Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

(See Addendum 2.)

_____

## VI.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

The foregoing paragraphs are incorporated herein: Defendants, each of them, violated plaintiff's rights under the Eighth Amendment by reckless and negligent deliberated indifference. Plaintiff demands judgment as follows: a. declaring that defendants violated plaintiff's rights under the eighth amendment; b. judgment against defendants for $10 million, jointly and severally, plus costs; c. punitive damages in the amount of $100 million, jointly and severally; and d. any other relief deemed just and appropriate by the Court.

_____

**VII.   Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

Gulf Correctional Institution

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☒ Yes

☐ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☐ Yes

☐ No

☒ Do not know

If yes, which claim(s)?

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.   Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☒ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☐ No

E.   If you did file a grievance:

1.   Where did you file the grievance?

All conditions precedent are exhausted.

2.   What did you claim in your grievance?

As a direct and proximate result of defendants conduct: ptt. injured.

3.   What was the result, if any?

Grievance approved.

4.   What steps, if any, did you take to appeal that decision?  Is the grievance process completed?  If not, explain why not.  *(Describe all efforts to appeal to the highest level of the grievance process.)*

Appropriate steps were taken.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

F.     If you did not file a grievance:

1.   If there are any reasons why you did not file a grievance, state them here:

_____

2.   If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

_____

G.     Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

_____

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.  Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☒ No

B.   If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit
   Plaintiff(s)   _____
   Defendant(s)   _____

2.   Court *(if federal court, name the district; if state court, name the county and State)*

_____

3.   Docket or index number

_____

4.   Name of Judge assigned to your case

_____

5.   Approximate date of filing lawsuit

_____

6.   Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition.   _____

7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

_____

C.   Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☐ Yes

☒ No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit
      Plaintiff(s) _____
      Defendant(s) _____

2.    Court *(if federal court, name the district; if state court, name the county and State)*

      _____

3.    Docket or index number

      _____

4.    Name of Judge assigned to your case

      _____

5.    Approximate date of filing lawsuit

      _____

6.    Is the case still pending?
      ☐ Yes
      ☐ No

      If no, give the approximate date of disposition _____

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

      _____

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## IX.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.      For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        6/3/2022

Signature of Plaintiff

Printed Name of Plaintiff        Michael L. Toler, JR

Prison Identification #        P21439

Prison Address        HOLMES CORRECTIONAL INST. 3142 THOMAS DR.

| BONIFAY | FL | 32425 |
|---------|-----|--------|
| *City* | *State* | *Zip Code* |

### B.      For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

| | | |
|---|---|---|
| *City* | *State* | *Zip Code* |

Telephone Number

E-mail Address

**AM 2/13 Part 1**

**08:28**

**Addendum 1.**

1. At all times relevant herein, Plaintiff was an American Citizen imprisoned at Gulf Correctional Institution, Gulf County, and was entitled to the equal protection of the law as it applies to his safety and the security of his person.
2. At all times relevant herein, defendant's had a public trust to provide absolute care to the Plaintiff. That care extends without limit to protect the life and safety of Plaintiff, absent any excerption.
3. On or about June 10, 2018, during the serving of the lunch time meal, 2 or more known gang members confronted Plaintiff to surrender his already occupied seat at the dining facility. A leading gang member demanded the seat for the purpose of obtaining an unobstructed view that would have allowed him direct view to prospective female employee. The member expressed that he had selected the employee to "gun her down." (A prison term otherwise defined as masturbating in public directed at a targeted female.)
4. Plaintiff refused to surrender his seat to the gang members the gang members initiated a rowdily discourse against the Plaintiff, by no direct fault of the Plaintiff. The gang members readily threatened to inflict serious harm upon Plaintiff.
5. Out of fear for Plaintiff's life, Plaintiff consulted with Defendant Smith concerning the gang's imminent threats against the security of Plaintiff's person. Smith summoned the ultra-violent members and told them to resolve the situation on wing one of F-Dormitory.
6. Defendant Smith then popped wing one door of F-Dormitory and directed the Plaintiff to enter wing one and to go talk to the gang members. (Plaintiff calls all of wing one affixed cameras in F-Dormitory on June 10, 2018 from around 11:30 am – 3:00 pm to support his claim) that Defendant Smith popped the door.
7. Upon entering wing one of F-Dormitory while standing in the dayroom waiting to talk to the gang members Plaintiff noticed a gang member previously identified, approach him lifting up his shirt visibly displaying a more than 9 inch jail made knife.
8. Observing this display of violent force, Defendant Smith asked plaintiff to return to his cell area. Smith refused to command the gang member to retreat.
9. Defendant Smith intentionally failed and refused to disarm the dangerous gang member, as the residents of the dormitory observed the members display of their wanton will to harm Plaintiff. The identified member was allowed to retain his deadly weaponry.
10. As a direct and proximate result of the act and omission of Defendant Smith, Plaintiff's fear worsened: Plaintiff communicated this increased fear through Jpay mail to Travis Culliver, his brother, alerting him that "something is in the air." Plaintiff repeated the same communication to said brother beseeching him to call the institution to obtain immediate assistance. A copy of the Jpay mail is attached hereto and incorporated by reference as if fully set forth herein.
11. Plaintiff also dispatched an email containing the same assessment of harm to Leon Hull, a cousin, conveying to him Plaintiff's genuine fear and concerns for his life and safety.

12. Culliver ultimately responded to the email acknowledging its receipt, and informing Plaintiff that he, Culliver, did indeed make contact with the institution describing to an official that Plaintiff was in genuine fear for his life and safety.

13. On June 11, 2018 in the afternoon, Plaintiff was directed to visit Defendant Beach in his office located at the multi-service building. (Plaintiff calls the pass book on said date to support his claim that he was called to the multi service building on that occasion.) Defendant Beach admitted that he had prior substantial knowledge of the "dangerous" incidents involving the gang members herein identified. Beach further admit that the "institution [had] a copy of the Jpay mail message sent to Culliver and Hull."

14. Plaintiff provided Defendant with a personal sworn statement evidencing the irrefutable fact proving the imminent threats made by the gang, and demonstrating Plaintiff's fear for his "life and safety," (see the attachments) Defendant Beach accepted the evidence from Plaintiff and merely inserted the instrument among a scattered assembly of papers disarrayed on his desk.

15. Defendant Beach refused to offer Plaintiff any form of protection or security.

16. At all times relevant herein Defendant Beach was a gang sergeant or Security Threat official who was fully aware of Plaintiff's imminent exposure to deadly violence offered by the infamous gang's deadly weaponry and wanton willingness to deploy great harm against Plaintiff. Instead, Beach forced Plaintiff to return to the general prison population and to an unsecured location wherein plaintiff was ultimately reached as a gang target, with ease, in such un-segregated space, patently in harms way.

17. Later, on the aforesaid date, at dinner time, Plaintiff was again confronted by the gang member. Two of them were present at the initiatory demand for the surrender of Plaintiff's seating. The violent gang publicly repeated its ongoing threats to terminate the life of Plaintiff.

18. A correctional officer, generally known to Plaintiff as "Battim," inquired into the rowdy noise, by now a full assembly of known violent gang members surrounding Plaintiff. Battim eventually dispersed the crowd. The gang members talking loudly and cursing staged themselves in a manner that allowed them to regroup absent any difficulty and minimum rehearsal.

19. After reassembling, the gang members re-approached Plaintiff and joined an alliance comprising other gangs and infamous affiliates. They had amassed a battalion of force to serious injure Plaintiff within view of state employees. The army of violence bombarded Plaintiff with its fearful offer "this is your day."

20. Plaintiff reported this enlarged dangerous development to a nearby John Doe: Security 9 detail. This detail failed and refused to provide the reasonable expectation and protection Plaintiff was and is entitled to.

**AM 2/13 Part 2**

**08:29**

**Addendum 1**

21. On June 12, 2018, as Plaintiff was standing peacefully awaiting to accept his religious dietary breakfast provision, Plaintiff was stabbed multiple times in his back, in his neck and in several other areas including both his left and right shoulders. (See the attached diagram of injury/medical report)

22. Defendant Carr and several other correctional officers witnessed the extreme violent stabbings suffered by Plaintiff. This regiment of public salaried security guards refused to offer aid to Plaintiff in the nature of protection from the violent gang of terror.

23. Defendant Carr and others intentionally refused to offer Plaintiff any aid in the prevention of sever infliction of harm suffered against him.

24. Defendant Carr arbitrarily and wrongfully pepper-sprayed Plaintiff directly and intensely to his eyes, nostrils and mouth, as Plaintiff was suffering as the actual victim from nearly deadly stabbings, only a few moments ago, which Defendant Carr and others failed and refused to prevent and deescalate.

25. As a direct and proximate result of the wanton attack inflicted by Defendant Carr, Plaintiff suffered shortness of breath while profusely bleeding from the near fatal stabbings witnessed by Defendant Carr.

26. As a direct result of Defendant's intentional acts and inactions, Plaintiff while innocent of any violation, was wrongfully and maliciously sprayed with toxic carcinogenic substance and denied access to water for the irrigation of his eyes. Plaintiff was, and is, injured to reduced visual acuity.

27. Plaintiff repeatedly complained to Defendant Carr and Nurse P. Osbourne, about his increasing pain to his bilateral eyes and the extreme burning sensation to his face, to no avail. Defendant forced Plaintiff to suffer this painful aggravation of an added egregious burden all while Plaintiff cuffed behind his back and was bleeding profusely as a direct and proximate result of Defendant's reckless negligence, incompetence, and deliberated indifference, in violation of the Eighth Amendment to the Constitution of the Federal Government.

28. Thereafter, Nurse P. Osbourne directed Defendant Carr to escort the Plaintiff to confinement without cleaning his freshly stab wounds or washing the gas from his face.

29. Once the Plaintiff entered the confinement wing all camera evidence in confinement will show that his wounds wasn't clean and he was escorted to the shower.

30. After taking a shower, the use of force camera will show that Defendant John Doe and Defendant Gregory Dykes refused to give Plaintiff new and clean clothes and Plaintiff was force to put back on contaminated clothes which had gas on them.

31. After receiving the contaminated clothes Plaintiff was escorted to his cell by Defendant Dykes, Gregory and John Doe.

32. Defendant Dykes then shut the cell door. Then turn off the use of force camera, then told the Plaintiff to cuff back up to go to medical. Plaintiff calls all wing cameras in confinement in H-dormitory and audio as evidence to support his claim.

33. Plaintiff was then escorted to medical.

34. Plaintiff asserts that the occurance took place at 0415. (See the attached medical diagram) However, Nurse Defendant, P. Osbourne assessed the Plaintiff at 0445. Plaintiff asserts that he was delayed treatment.

35. As a direct and proximate result of the described commission and omissions. Defendants violated their duty to protect Plaintiff from injury, in accordance with applicable law by negligently ignoring their responsibility as outlined in the department's policy, with the result that Plaintiff was severely stabbed multiple times in Defendant's presence.

36. Defendant's knew, and did obtain prior knowledge that the Plaintiff was exposed to crimes against him, such condition created a severe hazard palpably and manifestly unsafe to plaintiff.

37. The described failure of Defendant's to take precautionary measures to avoid or prevent attacks by these notorious gang members on Plaintiff was wanton or reckless or done with conscious disregard for the safety and personal right of Plaintiff.

38. Defendant FDC through its agents and employees was negligent in protecting Plaintiff's physical body from stabbings, in that Defendant breached its duty in providing the security necessary to protect life and limb of members of the institution including Plaintiff.

39. Defendant FDC by and through its employees breached its duty owed to Plaintiff by committing the following negligent acts, in violation of law:

> A) Failing to provide adequate and competent security personnel on the premises When it knew that Plaintiff was immediately exposed to a risk of violent harm from a known criminal enterprise occurring ;
>
> B) Failing to prevent the reasonably foreseeable attack from occurring;
>
> C) Failing to properly patrol the premises;
>
> D) Failing to take such other measures which were necessary and reasonable to protect and safeguard the persons and lives of people residing in the institution, such as Plaintiff;
>
> E) Failing to maintain a system of internal surveillance of the gang's activities;
>
> F) Failing to alert its employees to the danger of this sort and to provide them with adequate security training;
>
> G) Failing to provide notice to the public and Plaintiff in particular of the absence of adequate security that would have prevented Plaintiff's injuries;
>
> H) Failing to otherwise take appropriate precautions to avoid the severe stabbings to Plaintiff;
>
> I) Failing to secure the institution which was in such hostile conditions, and in failing to remedy that condition.

**Addendum 2**

MIT  40   33. As a direct and proximate result of Defendant's conduct of negligence, Plaintiff was required to obtain medical services and treatment. In addition, Plaintiff will, in the future, be compelled to seek further medical treatment.

MIT  41   34. As a direct and proximate result of Defendant's negligence and willful conduct of Defendant's. Plaintiff suffered severe and permanent injuries, and has suffered, and will in the future suffer great physical and mental anguish.

MIT  42   35. As a direct and proximate result of Defendant's negligence as described herein, Plaintiff was caused to suffer significant bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, medical and nursing care and treatment, and loss of the ability to earn future money. Plaintiff's injuries are permanent in nature and Plaintiff will suffer these injuries and losses in the future.

MIT  43   36. Because of Defendant's reckless, willful, and wanton misconduct constituting deliberate indifference, as described herein, Plaintiff's rights secured under the Eighth Amendment to the Federal Constitution were severely violated.

**PM 2/13 Part 1**

**046:14**

**Addendum 1.**

1. At all times relevant herein, Plaintiff was an American Citizen imprisoned at Gulf Correctional Institution, Gulf County, and was entitled to the equal protection of the law as it applies to his safety and the security of his person.
2. At all times relevant herein, defendant's had a public trust to provide absolute care to the Plaintiff. That care extends without limit to protect the life and safety of Plaintiff, absent any exception.
3. On or about June 10, 2018, during the serving of the lunch time meal, 2 or more known gang members confronted Plaintiff to surrender his already occupied seat at the dining facility. A leading gang member demanded the seat for the purpose of obtaining an unobstructed view that would have allowed him direct view to prospective female employee. The member expressed that he had selected the employee to a "gun her down." (A prison term otherwise defined as masturbating in public directed at a targeted female.)
4. Plaintiff refused to surrender his seat to the gang members the gang members initiated a rowdily discourse against the Plaintiff, by no direct fault of the Plaintiff. The gang members readily threatened to inflict serious harm upon Plaintiff.
5. Out of fear for Plaintiff's life, Plaintiff consulted with Defendant Smith concerning the gang's imminent threats against the security of Plaintiff's person. Smith summoned the ultra-violent members and told them to resolve the situation on wing one of F-Dormitory.
6. Defendant Smith then popped wing one door of F-Dormitory and directed the Plaintiff to enter wing one and to go talk to the gang members. (Plaintiff calls all of wing one affixed cameras in F-Dormitory on June 10, 2018 from around 11:30 am – 3:00 pm to support his claim) that Defendant Smith popped the door.
7. Upon entering wing one of F-Dormitory while standing in the dayroom waiting to talk to the gang members Plaintiff noticed a gang member previously identified, approach him lifting up his shirt visibly displaying a more than 9 inch jail made knife.
8. Observing this display of violent force, Defendant Smith asked plaintiff to return to his cell area. Smith refused to command the gang member to retreat.
9. Defendant Smith intentionally failed and refused to disarm the dangerous gang member, as the residents of the dormitory observed the members display of their wanton will to harm Plaintiff. The identified member was allowed to retain his deadly weaponry.
10. As a direct and proximate result of the act and omission of Defendant Smith, Plaintiff's fear worsened: Plaintiff communicated this increased fear through Jpay mail to Travis Culliver, his brother, alerting him that "something is in the air." Plaintiff repeated the same communication to said brother beseeching him to call the institution to obtain immediate assistance. A copy of the Jpay mail is attached hereto and incorporated by reference as if fully set forth herein.
11. Plaintiff also dispatched an email containing the same assessment of harm to Leon Hull, a cousin, conveying to him Plaintiff's genuine fear and concerns for his life and safety.

12. Culliver ultimately responded to the email acknowledging its receipt, and informing Plaintiff that he, Culliver, did indeed make contact with the institution describing to an official that Plaintiff was in genuine fear for his life and safety.

13. On June 11, 2018 in the afternoon, Plaintiff was directed to visit Defendant Beach in his office located at the multi-service building. (Plaintiff calls the pass book on said date to support his claim that he was called to the multi service building on that occasion.) Defendant Beach admitted that he had prior substantial knowledge of the "dangerous" incidents involving the gang members herein identified. Beach further admit that the "institution [had] a copy of the Jpay mail message sent to Culliver and Hull."

14. Plaintiff provided Defendant with a personal sworn statement evidencing the irrefutable fact proving the imminent threats made by the gang, and demonstrating Plaintiff's fear for his "life and safety," (see the attachments) Defendant Beach accepted the evidence from Plaintiff and merely inserted the instrument among a scattered assembly of papers disarrayed on his desk.

15. Defendant Beach refused to offer Plaintiff any form of protection or security.

16. At all times relevant herein Defendant Beach was a gang sergeant or Security Threat official who was fully aware of Plaintiff's imminent exposure to deadly violence offered by the infamous gang's deadly weaponry and wanton willingness to deploy great harm against Plaintiff. Instead, Beach forced Plaintiff to return to the general prison population and to an unsecured location wherein plaintiff was ultimately reached as a gang target, with ease, in such un-segregated space, patently in harms way.

17. Later, on the aforesaid date, at dinner time, Plaintiff was again confronted by the gang member. Two of them were present at the initiatory demand for the surrender of Plaintiff's seating. The violent gang publicly repeated its ongoing threats to terminate the life of Plaintiff.

18. A correctional officer, generally known to Plaintiff as "Battim," inquired into the rowdy noise, by now a full assembly of known violent gang members surrounding Plaintiff. Battim eventually dispersed the crowd. The gang members talking loudly and cursing staged themselves in a manner that allowed them to regroup absent any difficulty and minimum rehearsal.

19. After reassembling, the gang members re-approached Plaintiff and joined an alliance comprising other gangs and infamous affiliates. They had amassed a battalion of force to serious injure Plaintiff within view of state employees. The army of violence bombarded Plaintiff with its fearful offer "this is your day."

20. Plaintiff reported this enlarged dangerous development to a nearby John Doe: Security 9 detail. This detail failed and refused to provide the reasonable expectation and protection Plaintiff was and is entitled to.

**AM 2/13 Part 2**

**06:14**

**Addendum 1**

21. On June 12, 2018, as Plaintiff was standing peacefully awaiting to accept his religious dietary breakfast provision, Plaintiff was stabbed multiple times in his back, in his neck and in several other areas including both his left and right shoulders. (See the attached diagram of injury/medical report)

22. Defendant Carr and several other correctional officers witnessed the extreme violent stabbings suffered by Plaintiff. This regiment of public salaried security guards refused to offer aid to Plaintiff in the nature of protection from the violent gang of terror.

23. Defendant Carr and others intentionally refused to offer Plaintiff any aid in the prevention of sever infliction of harm suffered against him.

24. Defendant Carr arbitrarily and wrongfully pepper-sprayed Plaintiff directly and intensely to his eyes, nostrils and mouth, as Plaintiff was suffering as the actual victim from nearly deadly stabbings, only a few moments ago, which Defendant Carr and others failed and refused to prevent and deescalate.

25. As a direct and proximate result of the wanton attack inflicted by Defendant Carr, Plaintiff suffered shortness of breath while profusely bleeding from the near fatal stabbings witnessed by Defendant Carr.

26. As a direct result of Defendant's intentional acts and inactions, Plaintiff while innocent of any violation, was wrongfully and maliciously sprayed with toxic carcinogenic substance and denied access to water for the irrigation of his eyes. Plaintiff was, and is, injured to reduced visual acuity.

27. Plaintiff repeatedly complained to Defendant Carr and Nurse P. Osbourne, about his increasing pain to his bilateral eyes and the extreme burning sensation to his face, to no avail. Defendant forced Plaintiff to suffer this painful aggravation of an added egregious burden all while Plaintiff cuffed behind his back and was bleeding profusely as a direct and proximate result of Defendant's reckless negligence, incompetence, and deliberated indifference, in violation of the Eighth Amendment to the Constitution of the Federal Government.

28. Thereafter, Nurse P. Osbourne directed Defendant Carr to escort the Plaintiff to confinement without cleaning his freshly stab wounds or washing the gas from his face.

29. Once the Plaintiff entered the confinement wing all camera evidence in confinement will show that his wounds wasn't clean and he was escorted to the shower.

30. After taking a shower, the use of force camera will show that Defendant John Doe and Defendant Gregory Dykes refused to give Plaintiff new and clean clothes and Plaintiff was force to put back on contaminated clothes which had gas on them.

31. After receiving the contaminated clothes Plaintiff was escorted to his cell by Defendant Dykes, Gregory and John Doe.

32. Defendant Dykes and John Doe then shut the cell door. Then turn off the use of force camera, then told the Plaintiff to cuff back up to go to medical. (Plaintiff calls all wing cameras in confinement in H-dormitory and audio as evidence to support his claim).

33. Plaintiff was then escorted to medical.

34. Plaintiff asserts that the occurrence took place at 0415.   (See the attached medical diagram) However, Nurse Defendant, P. Osbourne assessed the Plaintiff at 0445. Plaintiff asserts that he was delayed treatment.

35. As a direct and proximate result of the described commission and omissions. Defendants violated their duty to protect Plaintiff from injury, in accordance with applicable law by negligently ignoring their responsibility as outlined in the department's policy, with the result that Plaintiff was severely stabbed multiple times in Defendant's presence.

36. Defendant's knew, and did obtain prior knowledge that the Plaintiff was exposed to crimes against him, such condition created a severe hazard palpably and manifestly unsafe to plaintiff.

37. The described failure of Defendant's to take precautionary measures to avoid or prevent attacks by these notorious gang members on Plaintiff was wanton or reckless or done with conscious disregard for the safety and personal right of Plaintiff.

38. Defendant FDC through its agents and employees was negligent in protecting Plaintiff's physical body from stabbings, in that Defendant breached its duty in providing the security necessary to protect life and limb of members of the institution including Plaintiff.

39. Defendant FDC by and through its employees breached its duty owed to Plaintiff by committing the following negligent acts, in violation of law:

> A) Failing to provide adequate and competent security personnel on the premises When it knew that Plaintiff was immediately exposed to a risk of violent harm from a known criminal enterprise occurring ;
>
> B) Failing to prevent the reasonably foreseeable attack from occurring;
>
> C) Failing to properly patrol the premises;
>
> D) Failing to take such other measures which were necessary and reasonable to protect and safeguard the persons and lives of people residing in the institution, such as Plaintiff;
>
> E) Failing to maintain a system of internal surveillance of the gang's activities;
>
> F) Failing to alert its employees to the danger of this sort and to provide them with adequate security training;
>
> G) Failing to provide notice to the public and Plaintiff in particular of the absence of adequate security that would have prevented Plaintiff's injuries;
>
> H) Failing to otherwise take appropriate precautions to avoid the severe stabbings to Plaintiff;
>
> I) Failing to secure the institution which was in such hostile conditions, and in failing to remedy that condition.

**Addendum 2**

MIT 40 33. As a direct and proximate result of Defendant's conduct of negligence, Plaintiff was required to obtain medical services and treatment. In addition, Plaintiff will, in the future, be compelled to seek further medical treatment.

MIT 41 34. As a direct and proximate result of Defendant's negligence and willful conduct of Defendant's. Plaintiff suffered severe and permanent injuries, and has suffered, and will in the future suffer great physical and mental anguish.

MIT 42 35. As a direct and proximate result of Defendant's negligence as described herein, Plaintiff was caused to suffer significant bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, medical and nursing care and treatment, and loss of the ability to earn future money. Plaintiff's injuries are permanent in nature and Plaintiff will suffer these injuries and losses in the future.

MIT 43 36. Because of Defendant's reckless, willful, and wanton misconduct constituting deliberate indifference, as described herein, Plaintiff's rights secured under the Eighth Amendment to the Federal Constitution were severely violated.

You have received a **jpay** letter, the fastest way to get mail

From : MICHAEL TOLER, ID: P21439
To : TC Culliver, CustomerID: 11959142
Date : 6/10/2018 6:10:21 PM EST,   Letter ID: 432933781
Location : 209
Housing : I4112L

bruh, wuz good? check it right tell mama to pray 4 me cuz things r real crazy right now the air aint right. please tell her to pray 4 a sheild of protection around me on another note go home round 6:30pm o 7:00pm and answer the phone cuz i really need 2 talk 2 u. it's very important.

**You have received a jpay letter, the fastest way to get mail**

From : TC Culliver, CustomerID: 11959142
To  : MICHAEL TOLER, ID: P21439
Date : 6/10/2018 6:26:31 PM EST,   Letter ID: 432939573   Parent Letter ID: 432933781
Location : 209
Housing : I4112L

I'm at church Bro I will; I will pray for you. You need to get in a place with GOD where you can pray

**You have received a *jpay* letter, the fastest way to get mail**

From   : MICHAEL TOLER, ID: P21439
To : TC Culliver,  CustomerID: 11959142
Date : 6/10/2018 7:43:44 PM EST.      Letter ID: 432970257   Parent Letter ID: 432939573
Location : 209
Housing : I4112L

okay,bruh it's crazy i'm trying 2  right, but the devil is attacking me and getting his troops to as well. bro i need u to please answer the phone 2 nite so that i can explain 2 u what's going on it's a life and death situatin so plase b home later around 8:00 pm ok luv u bruh

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

**You have received a _jpay_ letter, the fastest way to get mail**

From : MICHAEL TOLER, ID: P21439
To : TC Culliver, CustomerID: 11959142
Date : 6/10/2018 10:34:05 PM EST,    Letter ID: 433042873
Location : 209
Housing : I4112L

bruh, listen i was in the chow hall 2 day and a blood dude tried 2 take my seat so i told him no and i wasn't getting up so later on they up knifes on me and tried 2 jump me so i need u 2 call down here 2 night and get me some help before i don't get stabbed or get in any trouble and pray 4 me

## You have received a *jpay* letter, the fastest way to get mail

From    : MICHAEL TOLER, ID: P21439
To : Leon Hull,  CustomerID: 17508613
Date : 6/11/2018 11:03:44 AM EST,    Letter ID: 433196621
Location : 209
Housing :  I4112L

cuz i got that videogram of u and of gween cuz gween looking good 4 her age, how can i forget her much as i use 2 b over yall house every morning b-4 the sun even come up l.ol and like she say all them whooping she use 2 give me tell her i love her and miss all yall, and will send a viedogram when i can alright? on another note u look diffrent 2 cuz i see u boi! it's good 2 see that yall are living good and eating good out there. I can't wait 2 get out there with yall. str8 up! anyway cuz i ned u 2 pray 4 me cuz  pray 4 a shield of God protection 2 Be around becuz i got some bloods trying 2 flip me cuz i wouldn't get out my seat i'm gone try 2 hit back later after u respond sorry 4 the delay i just got the text.the viedo gram should be working later

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

# Witness Statement

**State of Florida**  Log # _____  **Department of Corrections**

## I. Identifying Inmate Information

DC # _____  Inmate Name _____

Violation Code and Short Title _____

Date Report Written _____

## II. Witness

☐ Staff Member: Name and Position _____

☐ Other Individual: Name _____

☒ Inmate:  DC # 921939  Name Michael

## III. Voluntary Refusal

The witness voluntarily refused to provide a written statement to the Investigating Officer and the following signature(s) attests to that fact:

Witness Signature _____  Date _____

Signature of Investigating Officer _____  Date 3-_____

## IV. Statement

Let this witness statement Adequately Reflect that I am Informing Sergeant Beach, that I am in Fear For my Life and I desire placed in PMD Because Yesterday on 6/10/2018 I was confronted By Blood gang members Because one of them wanted my Seat so that He masterbute on A officer I Informed them That I wasn't giving up my seat So they told Me to come to their Quad Because they FELT that I fucked up After going to their Quad to try to talle to them about this matter I Noticed the one who wanted my seat with A KNIFE unLer He His Shirt. He then told me to go to His Room. I wouldn't. Another gang member then tried to push me up towards the Blood gang member But I wouldn't go. So Sgt Smith noticed this then called me out the Quad's then sent me Back to my Quad. Later that day I was confronted by Bloods. Two were the same From Earlier. They then threatend to kill Me on the Back side of the chowhall. officer Buttrim who was standing out side of the chowhall. They shuffled in And dispersed every After I stated I'm going in the chowhall. Later That Night I text my Brother And on the J-Pay kiosk Machine And told them that I got into it with Bloods And told them that I was in Fear For my Life, And he call the institution. my Brother text me Back and said that He would call out for getting my Text Late. Today 6/11/18 I Informed Sergeant Beach About going through it with the Bloods And that I was in Fear For my Life. He said the warden, Colonel And major already knoW and that this Review will be Before they go out. And that He Tall to My LittLe Brother. So Again Let this witness statement Reflect that I am in Fear For my Life And desire to be Place in P.M.

Witness Signature _Michael S Solon Jr_  Date 6/11/2018

Signature of Investigating Officer _____  Date _____

DC6-112C (Revised 5-00)      Original: Inmate File      Copy: Central Office

**FLORIDA DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**DIAGRAM OF INJURY**



Date of occurrence 6/12/18        Time of occurrence 0415

Date injury assessed by medical 6/12/18    Time injury assessed by medical 0445

☐ No injury identified

Description of injury:
3 Superficial stab wounds.
1-2 cm in circumference

P. Osborne                P. OSBORNE, RN
**Staff Signature**          GULF C.I./ANNEX

Inmate Name Toler Michael
DC# P21439              Race/Sex B/m
Date of Birth 3/14/1984
Institution Gulf CI

This form is not to be amended, revised, or altered without
approval by the Director of Health Services- Administration.

Copies distribution:  White/Health Record   Canary/Inspector General   Pink/Warden or Asst. Warden

DC4-708 (Revised 10/07)

Incorporated by Reference in Rule 33-602.210, F.A.C.

r:10 AM

eSign EHR Encounter

## Patient's Endorsement

### Review Document and Accept Legal Text

R.M.C. Main & Hospital
7765 S CR 231
Lake Butler, FL  32054
Phone: 386.496.6000
Fax: 386.496.2069

Patient: MICHAEL TOLER
DC#: P21439
DOB: 03/14/1984
Sex: Male
Patient Location: 209-R.M.C.- MAIN UNIT

FLORIDA DEPARTMENT OF CORRECTIONS OFFICE OF HEALTH SERVICES
**CONSULTATION REQUEST**

**Current Allergies:**
Loratadine (Critical)
TEGretol (Critical)
Zoloft (Critical)

**Current Medications:**
BACLOFEN 10 MG ORAL TABS (BACLOFEN) 1 po bid (DOT); Route: ORAL
NAPROXEN 500 MG ORAL TABS (NAPROXEN) one tablet by mouth daily as
needed; Route: ORAL
AMLODIPINE BESYLATE 5 MG ORAL TABS (AMLODIPINE BESYLATE) one
tablet by mouth daily; Route: ORAL
ASPIRIN ADULT LOW STRENGTH 81 MG ORAL TBEC (ASPIRIN) Take 1 tablet
PO daily; Route: ORAL
METOPROLOL SUCCINATE ER 25MG ER TAKE 1/2 TABLET BY MOUTH EACH
DAY (KOP)

**Problem List:**
Jaw numbness, left (ICD-782.0) (ICD10-R20.0)
Neck pain, chronic (ICD-723.1) (ICD10-M54.2)
Hypertension (ICD-401.9) (ICD10-I10)
Tachycardia (ICD-785.0) (ICD10-R00.0)
Abnormal EKG (ICD-794.31) (ICD10-R94.31)
Adjustment disorder with depressed mood (ICD-309.0) (ICD10-F43.21)

**Specialty Service:** Refer to Physical Therapist

**Sending Institution:** 209-R.M.C.- MAIN UNIT **Date of Request:** 05/04/2022

**Reason for consultation:**
Evaluate and recommend diagnostic plan
Evaluate and recommend treatment plan

**Acuity of consultation:** Routine

**Condition is:** Chronic

**Visit Type** Initial

**History of present illness (include onset, presentation, progress, therapy)** Pt with neck pain and upper back pain due to previous stab wound. Pt refers was stabbed in neck area in 2018, since then presents neck and upper back pain.

**Physical Findings** Heent - limited range of motion and pain in cervical area to extension, flexion

**Diagnostic Findings** chronic neck pain due to stab wound, very painful and very limited range of motion to flexion and extension cervical xray- There is no radiographic evidence of acute disease in the cervical spine.

The condition of patient has been treated with antiinflamatories and muscle relaxants with no improvement. Pt will benefit from physical therapy.

**Associated Diagnosis:** Neck pain chronic (M54.2)

**EOS Date:**

01/12/2056

IT IS ABSOLUTELY NECESSARY THAT INMATES ARE NOT MADE AWARE OF ANY SCHEDULING INFORMATION PENDING ANY APPOINTMENT OUTSIDE THE INSTITUTION

DC4-702 Consultation Request (Revised 9/12/19)
This form is not to be amended, revised, or altered without approval of the Office of Health Services Administration.

**Disclaimer: All EMR timestamps are Eastern Time Zone**

This form is not to be amended, revised, or altered without approval of the Deputy Director of Health Services Administration.

I verify that I have read and agree to the terms printed above.

eSign EHR Encounter

**Patient's Endorsement**

Review Document and Accept Legal Text  

R.M.C. Main & Hospital
7765 S CR 231
Lake Butler, FL  32054
Phone: 386.496.6000
Fax: 386.496.2069

Patient: MICHAEL TOLER
DC#: P21439
DOB: 03/14/1984
Sex: Male
Patient Location: 209-R.M.C.- MAIN UNIT

FLORIDA DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES
**Chronological Record of Health Care**

**Staff type:** Provider
Other
**Remarks:** Pt with neck pain and upper back pain due to previous stab wound.
Please authorize flexeril 1 po bid
ibuprofen 400mg bid. Will send pt to PT.

**Disclaimer: All EMR timestamps are Eastern Time Zone**

**DC4-701 Chronological Record of Health Care (Revised 8/1/17)**
**This form is not to be amended, revised, or altered without approval of the**
**Office of Health Services Administration.**
**Disclaimer: All EMR timestamps are Eastern Time Zone**

This form is not to be amended, revised, or altered without approval of the
Deputy Director of Health Services Administration.

I verify that I have read and agree to the terms printed above.

**INMATE REQUEST**

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

Mail Number: _____
Institution: Gulf

| TO: (Check One) | ☑ Warden | ☑ Classification | ☐ Medical | ☐ Dental |
| | ☐ Asst. Warden | ☐ Security | ☐ Mental Health | ☐ Other _____ |

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
| | Toier, Michael | P21439 | H11225 | N/A | 6/18/18 |

**REQUEST**                    Check here if this is an informal grievance ☑

Re: Knowledge of Harm Failure to Protect Deliberate Indifference, cruel & unusual punishment

Ladies & Gentlemen,
                    Greetings, This Informal Complaint Is Being submitted due to the fact that I was stabbed multiple of times By another Inmate while Staff Stood and watched. I present that Gulf C.I. staff Had knowledge that Harm would Likely occur, But failed to take Reasonable measures to the grievant safety and treated his complaint and cries as a windfall

All requests will be handled in one of the following ways:  1) Written Information or   2) Personal Interview.  All informal grievances will be responded to in writing.

Inmate (Signature): Michael Toler          DC#: P21439

RECEIVED
ASST. WARDEN'S OFFICE
JUN 27 2018
PROGRAMS
GULF C.I.

**DO NOT WRITE BELOW THIS LINE**

**RESPONSE** 109-1806-0154   10C      DATE RECEIVED: _____

Your complaint has been referred to the IG's office for review. As action has been instituted you may consider your grievance approved from that standpoint

[The following pertains to informal grievances only:]

Based on the above information, your grievance is _Approved_ . (Returned, Denied, or Approved) If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Print Name): Paul Martin | Official (Signature): Paul Martin | Date: 6-27-18 |

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 12/14)

Incorporated by Reference in Rule 33-103.005, F.A.C.

continued from page 4

Leaving Him in the Hands of the people who wanted to kill Him, the grievant Has A List of things He seek for Relief at the end this grievance, And presents the following facts in support of s claim.

1) On June 10, 2018 The grievant was confronted By Two Bloody members in the chow Hall about A seat that one of them desired to sit in so that He could masterbate on A correctional officer who was present monitoring the noon meal. The grievant told the gang member who desired to Have His seat that He wasn't getting up, and HE couldn't Have His seat. After going back and forth for several minutes, Both gang members told the grievant to come to their wing in order to Resolve this Matter Because they felt that He (the grievant Booted up). Thereafter, the grievant went to their wing in order to talk about this Matter (See all wing Fixed Camera's in (F-Dorm wing are anywhere from 11:30Am - 3:00pm). After standing in the dayroom waiting to talk to them, the grievant noticed one of the gang members (The one who wanted His seat) (with a KNIFE) sgt smith then called the grievant out After everyone was standing on the Rail on His wing. addressing the whole ordeal, and told Him to go Back to His wing. Later on that Day the grievant Texted His Brother Tavaris Cullivea and Told Him that HE FELT something in the air and that He Had gotten into it with the bloods. He then texted Him Back (again on the kids J-pay Machine And told Him that He was in fear for His Life And to call the Institution In order to get Him some Help. Thereafter, He Texted Leon Hull on the kids J-pay Machine, and Told Him about the Matter as well. His Brother Tavaris cullivea Then Texted Him back and said that He was getting the grievant's Texts Late. However, the grievant Brother called the Institution He grievant's Texts Late.

2) On June 11, 2018 F-Dorm officer wrote the grievant A pass to go to Medical, However the grievant didn't see Medical, He was called to the gang sergeant office, where He talked to sergeant Beach. After informing sgt Beach About the Matter, He said that He already knew about the Matter And The Institution got the text off the J-pay kids Machine. After informing Him that I was in fear for my Life, He still threw Me to the wolves By Leaving Me in the Hands of the people who wanted to kill Me, Instead of protecting Me, By Locking Me up to prevent Harm. After Being Returned to the dorm, At dinner time I was confronted By (2)...

...in kill Me In the Back of the chow Hall. Two is confronted me about my seat a day Believe (2) go By the name Battin

...iseples and told because I was too Religious, and I didn't fight, I would be dealt with. I told security again, however, it was to no avi.

) The Next Morning June 12, 2018, I was stabbed in the Back Multiple of time By a gang member while waiting to get my Religious et Meal. I present that staff Had Knowledge that Harm would likely occur, But Failed to protect me, and acted with deliberate indifferences while I was being stabbed, Sgt Carr, tging with other Officers stood and watched for moments in order to see the end results, then sprayed chemicals. Then once I was taken medical they made me sit in the Lobby for More than (5) minutes with gas in my face without Allowing me to get up and wash out my eyes or letting medical do so. Instead Sgt Carr, was saying oh, maybe the cuffs isn't tight enough. Then once I complained about the Blood that I was loosing, and the continuous Burning sensation they just let me sit Longer, this was Sgt Carr, and the Two officers who Brought me to confinement. (See All confinement wing one Cameras to indentify the officers who Brought me in.) I present that I am in Fear for my life and I'm scared that this will happen again. I am depressed, small schocks, afraid, seeing things, Hearing things, Having anxiety that Everyone out to kill me, I Need Help - Please, Please, P-l-e-a-s-e!!! get me some Mental health, and Medical Treatment Because No one from Medical has seen me once the Incident occured. In conclusion, I am seeking the following.

## Relief Sought

1) Review All Cameras And Evidence Called in this grievance and Hold it For Further litigation

2) Interview "All Inmates" who went to R.A.P breakfast And Medical I/m The morning I was stabbed And Hold their statements & provide me with a copy

3) Fire all Officials who Had knowledge About this But Failed To protect me

4) Approve this grievance And Forward a copy to the Inspector General

5) Fire Medical Nurse who Failed To continue to treat me

6) Fire Sgt Carr and the officers who made me sit with gas in my Face And Lose Blood

7) Compensate me (20) Million dollars For knowledge of Harm, Failure to protect, deliberate Indifference / cruel & unusual punishment, and Protecting the one officer who stabbed and my wounds and scars

8) Get me Mental Health and Medical Treatment Because it Feels like the nerves are shattered in the Back of my Neck where I was stabbed

③.

**INMATE COPY**   **PART B - RESPONSE**

| TOLER, MICHAEL | P21439 | 1807-113-036 | FRANKLIN C.I. | A1214U |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative remedy or appeal has been received, reviewed and evaluated.

Your previous grievance was approved and was sent to the IG for further investigation.

Based on this information, your grievance is denied.

You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required by paragraphs 33-103.007(3)(a) and (b), F.A.C., and forwarding your complaint to the Bureau of Policy Management and Inmate Appeals, 501 South Calhoun Street, Tallahassee, Florida 32399-2500.

| | | |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 7/13/18 DATE |

RETURNED TO
INMATE ON

JUL 17 2018

OGE

FLORIDA DEPARTMENT OF CORRECTIONS

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

☐ Third Party Grievance Alleging Sexual Abuse  1807-113-036

TO: ☑ Warden      ☐ Assistant Warden      ☐ Secretary, Florida Department of Corrections

From or IF Alleging Sexual Abuse, on the behalf of:

Taler, Michael L          P21439          Franklin
Last    First    Middle Initial          DC Number          Institution

---

### Part A – Inmate Grievance

Re: Appealing Informal Complaint Log# 109-1806-0154 (see the Attached) Titled Knowledge of Harm, Failure To protect, Deliberate Indifference, Cruel & unusual punishment.

Ladies & Gentlemen,

Greetings, This Formal Complaint is Being submitted due to the Fact That the grievant Initially Filed A Informal Complaint At Gulf C.I. AFTER being Stabbed by another Inmate multiple of times while staff stood and watched. The grievant Asserts that He presented in His Informal Complaint that Gulf C.I. Officials HAD knowledge that Harm Would Likely occur, But failed to take Reasonable measures to the grievant safety, and Treated His Complaint And cries As A windfall By leaving Him in the Hands of people who wanted to kill Him. (see the Attached). ~~A~~ ~~...~~

(2.) Thereafter, the grievant Received A Response Back From the Ass. warden's office, Paul Martin, on 6-28-18 Approving the grievant's Informal Complaint Stating that "your Complaint has been Referred to the IG's office For Review As Action Has been initiated you may Consider your grievance approved From that standpoint." However, Nothing in the Response Indicated That the grievant would Be Receiving "Any" oR "All" of the Relief sought. The grievant Asserts that the Response was Nothing More than A MERE

7/1/2018
DATE

Security 7/12

Michael L Taler #P21439
SIGNATURE OF GRIEVANT AND D.C. #

---

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:

_____ / _____
#          Signature

his form is used for filing a formal grievance at the institution or facility level

Continued From page 1

*Michael Ider*
*#P21439*

Windfall And Brush off Because none of
the Relief sought was actually approved,
and it's not like the grievant will actually
Receive something Back in writing or documentation
Informing him that the Inspector Gener-
al office Approved His Relief. Therefore,
It nothing more than A Insult (ie. the
Response.)

(3) The grievant Asserts that He Have
Real Stabb wounds that Has Resulted in
Nerve Neews Damage and He's only seen
medical once, and that was when He get
Stabbed.

(4) The grievant Further Asserts that He's depressed,
Shell schock, aFraid that this will Happen
Again, seeing things, Hearing things, Having anxiety
that Everyone is out to kill Him, Losing weight,
Can't sleep and Having Emotions and Feeling telling Him
Not to talk to Anyone. And He need Mental Health
Treatment. And this is something that can't
wait

(5) Further More, the Grievant Asserts that No
one From the Inspector office Has Came to
See Him yet, Nor Has Any of the Inmates
He Requested to Be Interviewed in His
Informal complaint Been Interviewed
or their statements provided to Him.

(6) The grievant Requested that All cameras
And Evidence Called in HISI Informal grievance Be
Reviewed And Held For Futher Litigation.
However, Nothing in the Response Indicated
that Any of this Evidence was Held.

2.

Continued From Page 2                    Michael L. Isler Jr. #P21439

(7.) Lastly, The Grievant Requested to Be Compensated (20) Million Dollars For Knowledge of Harm, And Failure To protect, And Deliberate Indifference For Letting Him get stabbed, And the wounds, Scars, and Nerve Damage He Sustain. However, Nothing in the Response Indicated that He Would Be Compensated For His Damages, Injury, and Harm.

<u>Relief Sought</u>

(1.) The same Relief Sought in the informal And that the Inspector General office comes talk to Me.

(2.) I Be placed in the Infirmary For My Nerve Damages And Treated

(3.) Hold All Text Evidence that I text To My Family Prior to Being Stabbed That the Gang Sergeant And the Institution Received Prior to Me Being Stabbed.

Respectfully,

Michael L. Isler Jr.
#P21439

(See the Attached)
Informal Grievance

3.

AGENCY CLERK

AUG 0 3 2018

Department of Corrections
Bureau of Inmate Grievance Appeals

**PART B - RESPONSE**

| TOLER, MICHAEL | P21439 | 18-6-31422 | R.M.C.- MAIN UNIT | I2204U |
|---|---|---|---|---|
| NAME | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your administrative appeal has been reviewed and evaluated. The response that you received at the formal level has been reviewed and is found to appropriately address the concerns that you raised at the institutional level as well as the Central Office level.

The incident was referred to the Office of the Inspector General for review. It is responsibility of that Office to make the determination whether or not staff was negligent in performance of their duties. You may write their office to obtain any further information pertaining to the incident.

Your administrative appeal is denied.

C. Neel

SIGNATURE AND TYPED OR PRINTED NAME OF
EMPLOYEE RESPONDING

SIGNATURE OF WARDEN, ASST.
WARDEN, OR SECRETARY'S
REPRESENTATIVE

07/30/2018
DATE

**FLORIDA DEPARTMENT OF CORRECTIONS**

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

**RECEIVED**

☐ **Third Party Grievance Alleging Sexual Abuse**

JUL 2 6 2018

TO: ☐ Warden ☐ Assistant Warden ☑ Secretary, Florida Department of Corrections

Dep___ ___ ___ ___ Inmate ___ ___ ___ Appeals

From or **IF** Alleging Sexual Abuse, on the behalf of:

Toler, Michael L          P21439          Franklin
Last   First   Middle Initial      DC Number      Institution

---

Part A – Inmate Grievance

18-6-31422

RE: Appealing Formal Grievance Log #1807-113-036 Informal grievance Log #109-1806-0154 (see the Attached Titled Knowledge of Harm, Failure To Protect, Deliberate Indifference, Cruel and unusual Punishment.

Ladies & Gentlemen,

Greetings, This Complaint is being Submitted to the Secretary's office due to the Fact that the grievant Initially Filed A Informal complaint At Gulf C.I After being stabbed by another Inmate multiple of times while Staff stood Are watched. The grievant PRESENTED in His Informal complaint that Gulf C.I officials Had Knowledge that Harm would Likely occur, But FAiled To take Reasonable measures to the grievant safety, and treated His complaint And cries As A windfall By Leaving Him in the Hands of the people who wanted to kill Him (see the Attached)

(2.) Thereafter the grievant Received A Response Back From the Ass. warden's office, Paul Martin, on 6-28-18 Approving the grievant Informal complaint stating that "Your complaint HAs been ReFeRRed to the I.G.'s office For Review As Action Has Been Initiated you may consider your grievance Approved From that standpoint". However, Nothing in the Response Indicated that the grievant would Be Receiving "Any or All" of the Relief sought. The grievant Asserts that the Response was Nothing More than A

7/20/2018
DATE

Michael Sandolo Jr #P21439
SIGNATURE OF GRIEVANT AND D.C. #

---

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: ___ / ___
                                                                          #        Signature

This form is used for filing a formal grievance ___ ___

INSTRUCTIONS

windfall And Brewen off Because None of the Relief sory was Actually Approved And given to the grievant. plu It's Not Like the grievant will Receive Something B in writing Informing Him that the Inspector General office Approved His Relief. Therefore, the Response i Nothing More than A Insult.

(3) Thereafter, the grievant Filed A Formal Complaint to the warden's office (see the Attached Respon which stated: your Request for Administrative Remedy Appeal Has been Received, Reviewed and evaluated. Your previous grievance was Approved and was sent To the I for Futher Investigation. Based on this Information, y grievance is denied

(4) The grievant Asserts that He Has Real Stabb wroni that Has Resulted in serven nerle damage and He Barely Turn His Head From Side to side. and He's only s Medical once, and that was when He got stabbed.

(5) The grievant experiencing Depression, Smell scho Anxiety that this will Happen again, seeing thing Hearing things. Thinking Everyone's trying to kill Him. losing weight, Can't sleep and Having Emotion And Feelings telling Him Not to talk to Anyone And He Needs Mental Health Treatment. And this is som thing that Can't wait

(6) The grievant Asserts that No one From the Inspector general office Has come to see Him, Nor Has Any of the Inmates He Requested to Be Interviewed in his Informal complaint Been Interv wed or their statements provided to Him.

(7) The grievant Requested that all cammeras An Evidence called in his Informal grievance Be Reviewed And Held For Futher Litigation. However nothing in the Response Indicated that Any of the Evidence was Held.

(8) Lastly The grievant Requested to Be Conve

2

-sated (20) million Dollars For knowledge of his failure to protect, Deliberate Indifference for letting Him get stabbed, And the wounds, scars, Nerve Damage He sustained. However Nothing in the Response Indicated that He would Be compensated For His Damage, Injuries and Harm.

## Relief sought

(1) The same Relief sought in the Informal grievance And that the Inspector general office come talk to me.

(2) I Be placed in the Infirmary For my Nerve Damages And Treated.

(3) Idull All Text evidence that I text to m Family prior to Being stabbed that the g Sergeant Received prior to me Being stabbe And witness statements

Respectfully,

Michael Lahr Jr
# P21439

(See the Attached
Informal And Formal
Complaint.)

Michael 7 Tozer Jr #D21439
Holmes Correctional Institution
3142 Thomas Dr
Bonifay, FL 32425

Legal Mail

Northern District Court
Clerk, U.S. District Court
ONE North PalaFox Street
PensAcolA, Florida 32502
5658

Legal Mail

FIRST-CLASS MA...
$002 76...
Hasler
06/03/2022
ZIP 32425
011E11675012
MAILED FROM A
CORRECTIONAL
INSTITUTION

RECEIVED  JUN ...

PROVIDED TO
HOLMES CI

JUN 0 3 2022

FOR MAILING