MICHAEL L. TOLER JR # P21439
Reception Medical Center
Po. Box 628
LAKE BUTLER, FL 32054

MAILED FROM A
STATE CORRECTIONAL
INSTITUTION



US POSTAGE ~PITNEY BOWES
ZIP 32054 $ 010.15⁰
02 4W
0000369996 JUL 21 2022

RECEIVED JUL 2 5 2022

United States District Court
1 N. PALAFox Street
PENSACOLA, FL 32502

RECEPTION AND MEDICAL CENTER

DATE: 5/24/22

INMATE INITIALS: M.I.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**

RECEPTION AND MEDICAL CENTER
DATE: 7/21/22
INMATE INITIALS: MLT

AMENDED

<u>**CIVIL RIGHTS COMPLAINT FORM FOR**</u>
<u>**PRO SE PRISONER LITIGANTS IN ACTIONS UNDER**</u>
<u>**28 U.S.C. § 1331 or § 1346 or 42 U.S.C. § 1983**</u>

Michael L. Toler, Jr. ,

Inmate ID Number: P21439 ,

*(Write your full name and inmate ID*
*number.)*

**v.**

Secretary, Florida Dep't. of Corr. et al ,

_____ ,

_____ ,

*(Write the full name of each*
*Defendant who is being sued. If the*
*names of all the Defendants cannot*
*fit in the space above, please write*
*"see attached" in the space and*
*attach an additional page with the*
*full list of names. Do not include*
*addresses here.)*

_____ /

**Case No.:** 5:22-cv-110-TKW-MJF
*(To be filled in by the Clerk's Office)*

**Jury Trial Requested?**
☑ **YES**   ☐ **NO**


FILED USDC FLND PN
JUL 25 '22 PM 2:58 GM

# I. PARTIES TO THIS COMPLAINT

## A. Plaintiff

Plaintiff's Name: _Michael L. Toler, Jr.,_ ID Number: _P21439_

List all other names by which you have been known: _N/A_

Current Institution: _Reception Medical Center_

Address: _P.O. Box 628_

_Lake Butler, Florida 32054_

## B. Defendant(s)

State the name of the Defendant, whether an individual, government agency, organization, or corporation. For individual Defendants, identify the person's official position or job title, and mailing address. Indicate the capacity in which the Defendant is being sued. Do this for *each and every* Defendant:

1. Defendant's Name: _Secretary, Florida Dep't. of Corr._

   Official Position: _Secretary, Florida Dep't. of Corr_

   Employed at: _State of Florida_

   Mailing Address: _501 S. Calhoun St.,_

   _Tallahassee, Florida 32054_

   ☑ Sued in Individual Capacity          ☑ Sued in Official Capacity

2. Defendant's Name: John Doe: S. Payne

   Official Position: Warden

   Employed at: Gulf Correctional Institution

   Mailing Address: 500 SRE Steel Road

   Wewahitchka, Florida 32465

   ☑ Sued in Individual Capacity          ☑ Sued in Official Capacity

3. Defendant's Name: J.M Floyd

   Official Position: Chief of Security

   Employed at: Gulf Correctional Institution

   Mailing Address: 500 SRE Steel Road

   Wewahitchka, Florida 32465

   ☑ Sued in Individual Capacity          ☑ Sued in Official Capacity

   *(Provide this information for all additional Defendants in this case by*

   *attaching additional pages, as needed.)*

   See Attached For Additional Defendants

## II. BASIS FOR JURISDICTION UNDER 28 U.S.C. § 1331 or § 1346

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution" and federal law. Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

**Defendant 4:**

S. Ponder
Assistant Warden
Gulf Correctional Institution
500 SRE Steel Road
Wewahitchka, Florida 32465

☑ Official Capacity      ☑ Individual Capacity

**Defendant 5:**

John Doe: Sgt. Smith
Correctional Officer
Gulf Correctional Institution
500 SRE Steel Road
Wewahitchka, Florida 32465

☑ Official Capacity      ☑ Individual Capacity

**Defendant 6:**

John Doe: Beach
Correctional Officer
Gulf Correctional Institution
500 SRE Steel Road
Wewahitchka, Florida 32465

☑ Official Capacity      ☑ Individual Capacity

**Defendant 7:**

Jonathan Mullins
Correctional Officer
Gulf Correctional Institution
500 SRE Steel Road
Wewahitchka, Florida 32465

☑ Official Capacity      ☑ Individual Capacity

3A

**Defendant 8:**

Jane Doe: Sgt. Carr, L.A. # CLA 40
Correctional Officer
Gulf Correctional Institution
500 SRE Steel Road
Wewahitchka, Florida 32465

☑ Official Capacity        ☑ Individual Capacity

**Defendant 9:**

Gregory Dykes
Correctional Officer
Gulf Correctional Institution
500 SRE Steel Road
Wewahitchka, Florida 32465

☑ Official Capacity        ☑ Individual Capacity

**Defendant 10:**

Bryan P. Bevan
Correctional Officer
Gulf Correctional Institution
500 SRE Steel Road
Wewahitchka, Florida 32465

☑ Official Capacity        ☑ Individual Capacity

**Defendant 11:**

John Doe: Security 9
Correctional Officer
Gulf Correctional Institution
500 SRE Steel Road
Wewahitchka, Florida 32465

☑ Official Capacity        ☑ Individual Capacity

**Defendant 12:**

John Doe: 1
Correctional Officer
Gulf Correctional Institution
500 SRE Steel Road
Wewahitchka, Florida 32465

☑ Official Capacity     ☑ Individual Capacity

Are you bringing suit against (*check all that apply*):

☐ Federal Officials (*Bivens case*)      ☑ State/Local Officials (*§ 1983 case*)

## III.  PRISONER STATUS

Indicate your confined status:

☐ Pretrial Detainee              ☐ Civilly Committed Detainee

☑ Convicted State Prisoner       ☐ Convicted Federal Prisoner

☐ Immigration Detainee           ☐ Other (*explain below*):

_____

_____

## IV.  STATEMENT OF FACTS

Provide a short and plain statement of the *facts* showing why you are entitled
to relief. Describe how *each* Defendant was involved and what each Defendant
did, or did not do, in support of your claim. Identify when and where the events
took place, and state how each Defendant caused you harm or violated federal
law. Write each statement in short, numbered paragraphs, limited as far as
practicable to a single event or incident. ***Do not make legal arguments, quote
cases, cite statutes, or reference a memorandum.*** You may make copies of
page 6 if necessary to supply all the facts. Barring extraordinary circumstances,
no more than five (5) additional pages should be attached. Exhibits attached to

the complaint will count as part of your page limitation. Therefore, do not attach

irrelevant or unnecessary exhibits. Facts not related to this same incident or

issue must be addressed in a separate civil rights complaint.

(See Addendum 1 Attached)

**Statement of Facts Continued** (*Page____of_____*)

( See Addendum 1  Attached )

## V. STATEMENT OF CLAIMS

State what rights under the Constitution, laws, or treaties of the United States have been violated. Be specific. If more than one claim is asserted, number each separate claim and relate it to the facts alleged in Section IV. If more than one Defendant is named, indicate which claim is presented against which Defendant.

Eighth Amendment

( See Addendum 1   Attached )

## VI. RELIEF REQUESTED

State briefly what relief you seek from the Court. Do not make legal arguments or cite to cases/ statutes. If requesting money damages *(either actual or punitive damages)*, include the amount sought and explain the basis for the claims.

See Attached Relief Requested

## VI. RELIEF REQUESTED

The foregoing paragraphs are incorporated herein: Defendants, each of them, violated plaintiff's rights under the Eighth Amendment by reckless and negligent deliberated indifference. Plaintiff demands judgment as follows: a.) declaring that defendants violated Plaintiff's rights under the Eighth Amendment; b) judgment against defendants for $10 million, jointly and severally, plus costs; c) punitive damages in the amount of $100 million, jointly and severally; and d) any other relief deemed just and appropriate by the Court.

7A

## VII.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies (*grievance procedures*) before bringing a case. 42 U.S.C. § 1997e(a). **ATTENTION:** *If you did not exhaust available remedies prior to filing this case, this case may be dismissed.* If the case is dismissed for failure to exhaust or for any reason, you will still be required to pay the full filing fee and the dismissal may count as a "strike" under 28 U.S.C. § 1915(g). Therefore, please consider whether you have fully exhausted your remedies before proceeding with this action.

## VIII.  PRIOR LITIGATION

*This section requires you to identify your prior litigation history. Be advised that failure to disclose all prior state and federal cases—including, but not limited to civil cases, habeas cases, and appeals—may result in the dismissal of this case. You should err on the side of caution if you are uncertain whether a case should be identified.*

**ATTENTION:** *The "three strikes rule" of the PLRA bars a prisoner from bringing a case without full payment of the filing fee at the time of case initiation if the prisoner has "on three or more prior occasions, while*

*incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).*

A.  Have you had any case in federal court, including federal appellate court, dismissed as frivolous, as malicious, for failure to state a claim, or prior to service?

□ YES   ☑ NO

If "Yes," identify the case number, date of dismissal, and court for each case:

1.  Date: N/A _____ Case #: N/A _____

    Court: N/A _____

    Reason: N/A _____

2.  Date: N/A _____ Case #: N/A _____

    Court: N/A _____

    Reason: N/A _____

3.  Date: N/A _____ Case #: N/A _____

    Court: N/A _____

    Reason: N/A _____

*(If necessary, list additional cases on an attached page)*

B. Have you filed other lawsuits or appeals in **state or federal court** dealing

with the same facts or issue involved in this case?

□ YES ☑ NO

If "Yes," identify the case number, parties, date filed, result (*if not still*

*pending*), name of judge, and court for each case (*if more than one*):

1. Case #: N/A _____ Parties: N/A _____

   Court: N/A _____ Judge: N/A _____

   Date Filed: N/A _____ Dismissal Date (*if not pending*): N/A _____

   Reason: N/A _____

2. Case #: N/A _____ Parties: N/A _____

   Court: N/A _____ Judge: N/A _____

   Date Filed: N/A _____ Dismissal Date (*if not pending*): N/A _____

   Reason: N/A _____

   *(If necessary, list additional cases on an attached page)*

C. Have you filed any other lawsuit, habeas corpus petition, or appeal in

**state or federal court** either challenging your conviction or relating to

the conditions of your confinement?.

☑ YES   □ NO

If "Yes," identify all lawsuits, petitions and appeals:

1. Case #: 02-3360A       Parties: State of Florida

   Court: First Judicial       Judge: W. Joel Boles

   Date Filed: 3/23/20    Dismissal Date (*if not pending*): _____

   Reason: Denied

2. Case #: 1D20-1948      Parties: State of Florida

   Court: First District      Judge: Lewis, Osterhaus, & Kelsey, JJ.

   Date Filed: 6/22/20    Dismissal Date (*if not pending*): _____

   Reason: P.C.A.

3. Case #: N/A       Parties: N/A

   Court: N/A       Judge: N/A

   Date Filed: N/A    Dismissal Date (*if not pending*): N/A

   Reason: N/A

4. Case #: N/A       Parties: N/A

   Court: N/A       Judge: N/A

   Date Filed: N/A    Dismissal Date (*if not pending*): N/A

   Reason: N/A

5. Case #: N/A       Parties: N/A

   Court: N/A       Judge: N/A

   Date Filed: N/A    Dismissal Date (*if not pending*): N/A

   Reason: N/A

6.  Case #: N/A_____Parties: N/A_____

    Court: N/A_____Judge: N/A_____

    Date Filed: N/A_____Dismissal Date (*if not pending*): N/A_____

    Reason: N/A_____

    *(Attach additional pages as necessary to list all cases.)*

## IX. CERTIFICATION

1.  I declare, under penalty of perjury, that all of the information stated above
    and included on or with this form, including my litigation history, is true
    and correct.

2.  Additionally, as required by Federal Rule of Civil Procedure 11, I certify
    that to the best of my knowledge, information, and belief, this complaint:
    (1) is not being presented for an improper purpose, such as to harass, cause
    unnecessary delay, or needlessly increase the cost of litigation; (2) is
    supported by existing law or by a non- frivolous argument for extending,
    modifying, or reversing existing law; (3) the factual contentions have
    evidentiary support or, will likely have evidentiary support after a
    reasonable opportunity for further investigation or discovery; and (4) the
    complaint otherwise complies with the requirements of Rule 11.

3. I understand it is my obligation to timely notify the Clerk's Office if there is any change to my mailing address and that my failure to do so may result in a dismissal of the action.

Date: 7/20/22 Plaintiff's Signature: _____

Printed Name of Plaintiff: Michael L. Toler, Jr.

Correctional Institution: Reception Medical Center

Address: P.O. Box 628

Lake Butler, Florida 32054

**I certify and declare, under penalty of perjury, that this complaint was (*check one*) ☑ delivered to prison officials for mailing or ☐ deposited in the prison's mail system for mailing on the 20 day of 7, 20 22.**

Signature of Incarcerated Plaintiff: _____

PM 2/13 Part 1

08:28

**Addendum 1.**

1. At all times relevant herein, Plaintiff was an American Citizen imprisoned at Gulf Correctional Institution, Gulf County, and was entitled to the equal protection of the law as it applies to his safety and the security of his person.

2. At all times relevant herein, defendant's had a public trust to provide absolute care to the Plaintiff. That care extends without limit to protect the life and safety of Plaintiff, absent any exception.

3. On or about June 10, 2018, during the serving of the lunch time meal, 2 or more known gang members confronted Plaintiff to surrender his already occupied seat at the dining facility. A leading gang member demanded the seating for the purpose of obtaining an unobstructed view that would have allowed him direct view to a prospective female employee. The member expressed that he had selected the employee to "gun her down." (A prison term otherwise defined as masturbating in public directed at a targeted female.)

RCV'D USDC FLND PN
JUL 25 '22 PM3:00 GM

4. Plaintiff refused to surrender his seat to the gang members the gang members initiated a rowdy discourse against Plaintiff, by no direct fault of the Plaintiff. The gang members rowdily threatened to inflict serious harm upon Plaintiff.

5. Out of fear for Plaintiff's life, Plaintiff consulted with Defendant Smith concerning the gang's imminent threats against the security of Plaintiff's person. Defendant Smith summoned the ultra-violent members and told them to resolve the situation on wing one of F-Dormitory.

6. Defendant Smith then popped wing one door of F-dormitory and directed the Plaintiff to enter wing one and to go talk to the gang members. (Plaintiff calls all of wing one affixed cameras in F-dormitory on June 10, 2018 from around 11:30 am- 3:00 pm to support his claim that Defendant Smith popped the door).

7. Upon entering wing one of F-Dormitory while standing in the dayroom waiting to talk to the gang members Plaintiff noticed a gang member previously identified, approach him lifting up his shirt visibly displaying a more than 9 inch jail made knife.

8. Observing this display of violent force, Defendant Smith asked plaintiff to return to his cell area. Defendant Smith refused to command the gang member to retreat.

9. Defendant Smith intentionally failed and refused to disarm dangerous gang member, as the residents of the dormitory observed the members display of their wanton will to harm Plaintiff. The identified member was allowed to retain his deadly weaponry.

10. As a direct and proximate result of the act and omission of Defendant Smith, Plaintiff's fear worsened: Plaintiff communicated this increased fear through Jpay mail to Tavaris Culliver, his brother, alerting him that "something is in the air." Plaintiff repeated the same communication to said brother beseeching him to call the institution to obtain immediate assistance. A copy of the Jpay mail is attached hereto and incorporated by reference as if fully set forth herein.

11. Plaintiff also dispatched an email containing the same assessment of harm to Leon Hull, a cousin, conveying to him Plaintiff's genuine fear and concerns for his life and safety.

12. Culliver ultimately responded to the email acknowledging its receipt, and informing Plaintiff that he, Culliver, did indeed make contact with the

institution describing to an official that Plaintiff was in genuine fear of his life and safety.

13. On June 11, 2018 in the afternoon, Plaintiff was directed to visit Defendant Beach in his office located at the multi-service building. (Plaintiff calls the pass book in F-Dormitory on said date to support his claim that he was called to the multi service building on that occasion.) Defendant Beach admitted that he had prior substantial knowledge of the "dangerous" incidents involving the gang members herein identified. Beach further admits that the "institution [had] a copy of the Jpay mail message sent to Culliver and Hull."

14. Plaintiff provided Defendant Beach with a personal sworn statement evidencing the irrefutable fact proving the imminent threats made by the gang, and demonstrating Plaintiff's fear for his "life and safety," (see attached) Defendant Beach accepted the evidence from Plaintiff and merely inserted the instrument among a scattered assembly of papers disarrayed on his desk.

15. Defendant Beach refused to offer Plaintiff any form of protection or security.

16. At all times relevant herein Defendant Beach was a gang sergeant or Security Threat official who was fully aware of Plaintiff's imminent exposure to deadly violence offered by the infamous gang's deadly weaponry and wanton willingness to deploy great harm against Plaintiff. Instead Beach forced Plaintiff to return to the general prison population and to an unsecured location wherein Plaintiff was ultimately reach as a gang target, with ease, in such un-segregated space, patently in harms way.

17. Later on the aforesaid date, at dinner time, Plaintiff was again confronted by the gang member. Two of them were present at the initiatory demand for the surrender of Plaintiff's seating. The violent gang publicly repeated its ongoing threats to terminate the life of Plaintiff.

18. A correctional officer, generally known to Plaintiff as "Battim," inquired into the rowdy noise, by now a fully assembly of known violent gang members surrounding Plaintiff. Battim eventually dispersed the crowd. The gang members talking loudly and cursing staged themselves in a manner that allowed them to regroup absent difficulty and minimum rehearsal.

19. After reassembling, the gang members re-approached Plaintiff and joined an alliance comprising other gangs and infamous affiliates. They had amassed a battalion of force to serious injure Plaintiff within view of state employees.

The army of violence bombarded Plaintiff with its fearful offer "this is your day."

20. Plaintiff reported this enlarged dangerous development to a nearby John Doe: Security 9 detail. This detail failed and refused to provide the reasonable expectation and protection Plaintiff was and is entitled to.

**AM 2/13 Part 2**

**08:29**

**Addendum 1**

21. On June 12, 2018, as Plaintiff was standing peacefully awaiting to accept his religious dietary breakfast provision, Plaintiff was stabbed multiple times in his back, in his neck and in several other areas including both his left and right shoulders. (See the attached diagram of injury/medical report)

22. Defendant Carr and several other correctional officers witnessed the extreme violent stabbings suffered by Plaintiff. This regiment of public salaried security guards refused to offer aid to Plaintiff in the nature of protection from the violent gang of terror.

23. Defendant Carr and others intentionally refused to offer Plaintiff any aid in the prevention of severe infliction of harm suffered against him.

24. Defendant Carr arbitrarily and wrongfully pepper-sprayed Plaintiff directly and intensely to his eyes, nostrils and mouth, as Plaintiff was suffering as the actual victim from nearly deadly stabbings, only a few months ago, which Defendant Carr and others failed and refused to prevent and deescalate.

25. As a direct and proximate result of the wanton attack inflicted by Defendant Carr, Plaintiff suffered shortness of breath while profusely bleeding from the near fatal stabbings witnessed by Defendant Carr.

26. As a direct result of Defendant's intentional acts and inactions, Plaintiff while innocent of any violation, was wrongfully and maliciously sprayed with toxic carcinogenic substance and denied access to water for irrigation of his eyes. Plaintiff was , and is, injured to reduced visual acuity.

27. Plaintiff repeatedly complained to Defendant Carr and Nurse P. Osbourne, about his increasing pain to his bilateral eyes and the extreme burning sensation to his face, to no avail. Defendant forced Plaintiff to suffer this painful aggravation of an added egregious burden all while Plaintiff was cuffed behind his back and was bleeding profusely as a direct and proximate result of Defendant's reckless negligence, incompetence, and deliberated indifference, in violation of the Eighth Amendment to the Constitution of the Federal government.

28. ~~Defendant~~ MLT Nurse P. Osbourne directed Defendant Carr to escort Plaintiff to confinement without cleaning his freshly stab wounds or washing the gas from his face.

29. After taking a short shower, the use of force camera will show the Defendant Bryan P. Bevan, Defendant John Doe, and Defendant Gregory Dykes refused to give Plaintiff new and clean clothes and Plaintiff was forced to put back on contaminated clothes which had gas on them.

30. After receiving the contaminated clothes, Plaintiff was escorted to his cell by Defendants' Dykes, and Bryan P. Bevan, and Defendant John Doe.

31. Defendant Dykes told Defendant Bryan P. Bevan and Defendant John Doe to shut the cell door. Then turn off the use of force camera, then told the Plaintiff to cuff back up to go to medical. (Plaintiff calls all wing cameras in confinement in H-dormitory and audio as evidence to support his claim that he was placed back in restraints then escorted to the medical room in H-Dormitory).

32. Plaintiff asserts that the stabbing occurrence took place at 04:15. (See the attached medical diagram) However, Nurse ~~Defendant~~ MLT P. Osbourne assessed the Plaintiff at 04:45. (See attached medical diagram) Plaintiff asserts that he was delayed treatment.

33. As direct and proximate result of the described commission and omissions. Defendants violated their duty to protect Plaintiff from injury, in accordance with applicable law by negligently ignoring their responsibility as outlined

in the department's policy, with the result that Plaintiff was severely stabbed multiple times in Defendant's presence.

35. Defendants knew, and did obtain prior knowledge that the Plaintiff was exposed to crimes against him, such condition created a severe hazard palpably and manifestly unsafe to Plaintiff.

36. The described failure of Defendant's to take precautionary measures to avoid or prevent attacks by these notorious gang members on Plaintiff was wanton or reckless or done with conscious disregard for the safety and personal right to Plaintiff.

37. Defendant FDC through its agents and employees was negligent in protecting Plaintiff's physical body from stabbings, in that Defendant breached its duty in providing the security necessary to protect life and limb of members of the institution including Plaintiff.

38. FDC by and through its employees breached its duty owed to Plaintiff by committing the following negligent acts, in violation of law:

A) Failing to provide adequate and competent security personnel on the premises when it knew that Plaintiff was immediately exposed to a risk of violent harm from a known criminal enterprise occurring in the institution;

B) Failing to prevent the reasonably foreseeable attack from occurring;

C) Failing to properly patrol the premises;

D) Failing to take such other measures which were necessary and reasonable to protect and safeguard the persons and lives of people residing in the institution, such as Plaintiff;

E) Failing to maintain a system of internal surveillance of the gang's activities;

F) Failing to alert its employees to the danger of this sort and to provide them with adequate security training;

G) Failing to provide notice to the public and Plaintiff in particular of the absence of adequate security that would have prevented Plaintiff's injuries;

H) Failing to otherwise take appropriate precautions to avoid the severe stabbings to Plaintiff;

**Addendum 2**

**39.** As a direct and proximate result of Defendant's conduct of negligence, Plaintiff was required to obtain medical services treatment. In addition, Plaintiff will, in the future, be compelled to seek further medical treatment.

**40.** As a direct and proximate result of Defendant's negligence and willful conduct of Defendant's. Plaintiff suffered severe and permanent injuries, and has suffered, and will in the future suffer great physical and mental anguish.

**41.** As a direct and proximate result of Defendant's negligence as described herein, Plaintiff was caused to suffer significant bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, medical and nursing care and treatment, and loss of the ability to earn future money. Plaintiff's injuries are permanent in nature and Plaintiff will suffer these injuries and losses in the future.

**42.** Because of the Defendant's reckless and willful, and wanton misconduct constituting deliberate indifference, as described herein, Plaintiff's rights secured under the Eighth Amendment to the Federal Constitution were severely violated.

**PM 2/13 Part 1**

**046:14**

**Addendum 1.**

1. At all times relevant herein, Plaintiff was an American Citizen imprisoned at Gulf Correctional Institution, Gulf County, and was entitled to the equal protection of the law as it applies to his safety and the security of his person.

2. At all times relevant herein, defendant's had a public trust to provide absolute care to the Plaintiff. That care extends without limit to protect the life and safety of Plaintiff, absent any exception.

3. On or about June 10, 2018, during the serving of the lunch time meal, 2 or more known gang members confronted Plaintiff to surrender his already occupied seat at the dining facility. A leading gang member demanded the seating for the purpose of obtaining an unobstructed view that would have allowed him direct view to a prospective female employee. The member expressed that he had selected the employee to "gun her down." (A prison term otherwise defined as masturbating in public directed at a targeted female.)

4. Plaintiff refused to surrender his seat to the gang members the gang members initiated a rowdy discourse against Plaintiff, by no direct fault of

RCV'D USDC FLND PN
JUL 25 '22 PM3:00

the Plaintiff. The gang members rowdily threatened to inflict serious harm upon Plaintiff.

5. Out of fear for Plaintiff's life, Plaintiff consulted with Defendant Smith concerning the gang's imminent threats against the security of Plaintiff's person. Defendant Smith summoned the ultra-violent members and to them to resolve the situation on wing one at F-Dormitory.

6. Defendant Smith then popped wing one door of F-dormitory and directed the Plaintiff to enter wing one and to go talk to the gang members. (Plaintiff calls all of wing one affixed cameras in F-dormitory on June 10, 2018 from around 11:30 am- 3:00 pm to support his claim that Defendant Smith popped the door).

7. Upon entering wing one of F-Dormitory while standing in the dayroom waiting to talk to the gang members Plaintiff noticed a gang member previously identified, approach him lifting up his shirt visibly displaying a more than 9 inch jail made knife.

8. Observing this display of violent force, Defendant Smith asked plaintiff to return to his cell area. Defendant Smith refused to command the gang member to retreat.

9.  Defendant Smith intentionally failed to refused to disarm dangerous gang
    member, as the residents of the dormitory observed the members display of
    their wanton will to harm Plaintiff. The identified member was allowed to
    retain his deadly weaponry.

10. As a direct and proximate result of the act and omission of Defendant
    Smith, Plaintiff's fear worsened: Plaintiff communicated this increased fear
    through Jpay mail to Tavaris Culliver, his brother, alerting him that
    "something is in the air." Plaintiff repeated the same communication to said
    brother beseeching him to call the institution to obtain immediate assistance.
    A copy of the Jpay mail is attached hereto and incorporated by reference as
    if fully set forth herein.

11. Plaintiff also dispatched an email containing the same assessment of harm
    to Leon Hull, a cousin, conveying to him Plaintiff's genuine fear and
    concerns for his life and safety.

12. Culliver ultimately responded to the email acknowledging its receipt, and
    informing Plaintiff that he, Culliver, did indeed make contact with the
    institution describing to an official that Plaintiff was in genuine fear of his
    life and safety.

13. On June 11, 2018 in the afternoon, Plaintiff was directed to visit Defendant Beach in his office located at the multi-service building. (Plaintiff calls the pass book in F-Dormitory on said date to support his claim that he was called to the multi service building on that occasion.) Defendant Beach admitted that he had prior substantial knowledge of the "dangerous" incidents involving the gang members herein identified. Beach further admits that the "institution [had] a copy of the Jpay mail message sent to Culliver and Hull."

14. Plaintiff provided Defendant Beach with a personal sworn statement evidencing the irrefutable fact proving the imminent threats made by the gang, and demonstrating Plaintiff's fear for his "life and safety," (see attached witness statement) Defendant Beach accepted the evidence from Plaintiff and merely inserted the instrument among a scattered assembly of papers disarrayed on his desk.

15. Defendant Beach refused to offer Plaintiff any form of protection or security.

16. At all times relevant herein Defendant Beach was a gang sergeant or Security Threat official who was fully aware of Plaintiff's imminent exposure to deadly violence offered by the infamous gang's deadly

weaponry and wanton willingness to deploy great harm against Plaintiff. Instead Beach forced Plaintiff to return to the general prison population and to an unsecured location wherein Plaintiff was ultimately reach as a gang target, with ease, in such un-segregated space, patently in harms way.

17.  Later on the aforesaid date, at dinner time, Plaintiff was again confronted by the gang member. Two of them were present at the initiatory demand for the surrender of Plaintiff's seating. The violent gang publicly repeated its ongoing threats to terminate the life of Plaintiff.

18.  A correctional officer, generally known to Plaintiff as "Battim," inquired into the rowdy noise, by now a fully assembly of known violent gang members surrounding Plaintiff. Battim eventually dispersed the crowd. The gang members talking loudly and cursing staged themselves in a manner that allowed them to regroup absent difficulty and minimum rehearsal.

19.  After reassembling, the gang members re-approached Plaintiff and joined an alliance comprising other gangs and infamous affiliates. They had amassed a battalion of force to serious injure Plaintiff within view of state employees. The army of violence bombarded Plaintiff with its fearful offer "this is your day."

**20.** Plaintiff reported this enlarged dangerous development to a nearby John Doe: Security 9 detail. This detail failed and refused to provide the reasonable expectation and protection Plaintiff was and is entitled to.

**AM 2/13 Part 2**

**06:14**

**Addendum 1**

21. On June 12, 2018, as Plaintiff was standing peacefully awaiting to accept his religious dietary breakfast provision, Plaintiff was stabbed multiple times in his back, in his neck and in several other areas including both his left and right shoulders. (See the attached diagram of injury/medical report)

22. Defendant Carr and several other correctional officers witnessed the extreme violent stabbings suffered by Plaintiff. This regiment of public salaried security guards refused to offer aid to Plaintiff in the nature of protection from the violent gang of terror.

23. Defendant Carr and others intentionally refused to offer Plaintiff any aid in the prevention of severe infliction of harm suffered against him.

24. Defendant Carr arbitrarily and wrongfully pepper-sprayed Plaintiff directly and intensely to his eyes, nostrils and mouth, as Plaintiff was suffering as the actual victim from nearly deadly stabbings, only a few months ago, which Defendant Carr and others failed and refused to prevent and deescalate.

25. As a direct and proximate result of the wanton attack inflicted by Defendant Carr, Plaintiff suffered shortness of breath while profusely bleeding from the near fatal stabbings witnessed by Defendant Carr.

26. As a direct result of Defendant's intentional acts and inactions, Plaintiff while innocent of any violation, was wrongfully and maliciously sprayed with toxic carcinogenic substance and denied access to water for irrigation of his eyes. Plaintiff was , and is, injured to reduced visual acuity.

27. Plaintiff repeatedly complained to Defendant Carr and Nurse P. Osbourne, about his increasing pain to his bilateral eyes and the extreme burning sensation to his face, to no avail. Defendant forced Plaintiff to suffer this painful aggravation of an added egregious burden all while Plaintiff was cuffed behind his back and was bleeding profusely as a direct and proximate result of Defendant's reckless negligence, incompetence, and deliberated indifference, in violation of the Eighth Amendment to the Constitution of the Federal government.

MLT
28. ~~Defendant~~ Nurse P. Osbourne directed Defendant Carr to escort Plaintiff to confinement without cleaning his freshly stab wounds or washing the gas from his face.

29. After taking a short shower, the use of force camera will show the Defendant Bryan P. Bevan, Defendant John Doe, and Defendant Gregory Dykes refused to give Plaintiff new and clean clothes and Plaintiff was forced to put back on contaminated clothes which had gas on them.

30. After receiving the contaminated clothes, Plaintiff was escorted to his cell by Defendants' Dykes, Bryan P. Bevan, and Defendant John Doe.

31. Defendant Dykes told Defendant Bryan P. Bevan and Defendant John Doe to shut the cell door. Then turn off the use of force camera, then told the Plaintiff to cuff back up to go to medical. (Plaintiff calls all wing cameras in confinement in H-dormitory and audio as evidence to support his claim that he was placed back in restraints then escorted to the medical room in H-Dormitory).

32. Plaintiff asserts that the stabbing occurrence took place at 04:15. (See the attached medical diagram) However, Nurse Defendant P. Osbourne assessed the Plaintiff at 04:45. (See attached medical diagram) Plaintiff asserts that he was delayed treatment.

33. As direct and proximate result of the described commission and omissions. Defendants violated their duty to protect Plaintiff from injury, in accordance with applicable law by negligently ignoring their responsibility as outlined

in the department's policy, with the result that Plaintiff was severely stabbed multiple times in Defendant's presence.

34. Defendants knew, and did obtain prior knowledge that the Plaintiff was exposed to crimes against him, such condition created a severe hazard palpably and manifestly unsafe to Plaintiff.

35. The described failure of Defendant's to take precautionary measures to avoid or prevent attacks by these notorious gang members on Plaintiff was wanton or reckless or done with conscious disregard for the safety and personal right to Plaintiff.

36. Defendant FDC through its agents and employees was negligent in protecting Plaintiff's physical body from stabbings, in that Defendant breached its duty in providing the security necessary to protect life and limb of members of the institution including Plaintiff.

37. Defendant FDC by and through its employees breached its duty owed to Plaintiff by committing the following negligent acts, in violation of law:

A) Failing to provide adequate and competent security personnel on the premises when it knew that Plaintiff was immediately exposed to a risk of violent harm from a known criminal enterprise occurring in the institution;

B) Failing to prevent the reasonably foreseeable attack from occurring;

C) Failing to properly patrol the premises;

D) Failing to take such other measures which were necessary and reasonable to protect and safeguard the persons and lives of people residing in the institution, such as Plaintiff;

E) Failing to maintain a system of internal surveillance of the gang's activities;

F) Failing to alert its employees to the danger of this sort and to provide them with adequate security training;

G) Failing to provide notice to the public and Plaintiff in particular of the absence of adequate security that would have prevented Plaintiff's injuries;

H) Failing to otherwise take appropriate precautions to avoid the severe stabbings to Plaintiff;

I) Failing to secure the institution which was in such hostile conditions, and in failing to remedy that condition.

**Addendum 2**

**39.** As a direct and proximate result of Defendant's conduct of negligence, Plaintiff was required to obtain medical services treatment. In addition, Plaintiff will, in the future, be compelled to seek further medical treatment.

**40.** As a direct and proximate result of Defendant's negligence and willful conduct of Defendant's. Plaintiff suffered severe and permanent injuries, and has suffered, and will in the future suffer great physical and mental anguish.

**41.** As a direct and proximate result of Defendant's negligence as described herein, Plaintiff was caused to suffer significant bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, medical and nursing care and treatment, and loss of the ability to earn future money. Plaintiff's injuries are permanent in nature and Plaintiff will suffer these injuries and losses in the future.

**42.** Because of the Defendant's reckless and willful, and wanton misconduct constituting deliberate indifference, as described herein, Plaintiff's rights secured under the Eighth Amendment to the Federal Constitution were severely violated.

MICHAEL TOLER P21439 209 I4112L  ID:432933781  [P 1/1]

You have received a **JPAY** letter, the fastest way to get mail

From  : MICHAEL TOLER, ID: P21439
To : TC Culliver,  CustomerID: 11959142
Date : 6/10/2018 6:10:21 PM EST,     Letter ID: 432933781
Location : 209
Housing : I4112L

bruh, wuz good? check it right tell mama to pray 4 me cuz things r real crazy right now the  air aint right. please tell her to pray 4 a shelld of protection around me on another note go home round 6:30pm o 7:00pm and answer the phone cuz i really need 2 talk 2 u. it's very important.

**JPAY** Tell your friends and family to visit www.jpay.com to write letters and send money!

MICHAEL TOLER P21439 209 I4112L  ID:432939573  [P 1/1]

You have received a **jpay** letter, the fastest way to get mail

From : TC Culliver   CustomerID: 11959142
To  : MICHAEL TOLER, ID: P21439
Date : 6/10/2018 6:26:31 PM EST,   Letter ID: 432939573   Parent Letter ID: 432933781
Location : 209
Housing : I4112L

I'm at church Bro I will; I will pray for you. You need to get in a place with GOD where you can pray

MICHAEL TOLER P21439 209 I4112L  ID:432970257  [P 1/1]

You have received a **jpay** letter, the fastest way to get mail

From   : MICHAEL TOLER, ID: P21439
To : TC Culliver,  Customer ID: 11959142
Date : 6/10/2018 7:43:44 PM EST,   Letter ID: 432970257   Parent Letter ID: 432939573
Location : 209
Housing : I4112L

okay,bruh it's crazy i'm trying 2  right, but the devil is attacking me and getting his troops to as well. bro i need u to please answer the phone 2 nite so that i can explain 2 u what's going on it's a life and death situatin so plase b home later around 8:00 pm ok luv u bruh

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

*You have received a JPay letter, the fastest way to get mail*

From   : MICHAEL TOLER, ID: P21439
To :  TC Culliver,  CustomerID: 11959142
Date : 6/10/2018 10:34:05 PM EST,    Letter ID: 433042873
Location : 209
Housing : I4112L

bruh, listen i was in the chow hall 2 day and a blood dude tried 2 take my seat so i told him no and i wasn't getting up
so later on they up knifes on me and tried 2 jump me so i need u 2 call down here 2 night and get me some help
before i don't get stabbed or get in any trouble and pray 4 me

. . . .

MICHAEL TOLER P21439 209 I4112L  ID:433196621  [P 1/1]

You have received a **jpay** letter, the fastest way to get mail

From   : MICHAEL TOLER, ID: P21439.
To :  Leon Hull,  CustomerID: 17508613
Date : 6/11/2018 11:03:44 AM EST,    Letter ID: 433196621
Location :  209
Housing : I4112L

cuz i got that videogram of u and of gween cuz gween looking good 4 her age, how can i forget her much as i use 2 b over yall house every morning b-4 the sun even come up l.ol and like she say all them whooping she use 2 give me i tell her i love her and miss all yall, and will send a viedogram when i can alright? on another note u look diffrent 2 cuz i see u boil it's good 2 see that yall are living good and eating good out there. I can't wait 2 get out there with yall. str8 up! anyway cuz i ned u 2 pray 4 me cuz  pray 4 a shield of God protection 2 Be around becuz i got some bloods trying 2 flip me cuz i wouldn't get out my seat i'm gone try 2 hit back later after u respond sorry 4 the delay I just got the text.the viedo gram should be working later

# Witness Statement

| State of Florida | Log # _____ | Department of Corrections |

## I. Identifying Inmate Information

DC # _____    Inmate Name _____

Violation Code and Short Title _____

Date Report Written _____

## II. Witness

☐ Staff Member: Name and Position _____

☐ Other Individual: Name _____

☒ Inmate:  DC # 921939    Name Michael _____

## III. Voluntary Refusal

The witness voluntarily refused to provide a written statement to the Investigating Officer and the following signature(s) attests to that fact:

Witness Signature _____    Date _____

Signature of Investigating Officer _____    Date 3 __

## IV. Statement

Let this witness statement Adequately Reflect that I am Informing Sergeant Beach, that I am in Fear For my Life and I desire to be placed in P.M.C. Because Yesterday on 6/10/2018 I was confronted By Blood gang Members Because one of them wanted my Seat so that the could Mesterbate on A officer. I Informed them that I wasn't giving up my Seat so they told me to come to their Quad Because they FELT that I would Back up AFTER going to their Quad to try to talk to them about this matter I Noticed the one who wanted my Seat with A KNIFE once He lift his Shirt. He then told me to go to His Room. I wouldn't. Another Member then tried to Push me up towards the Blood gang member cell. But I wouldn't go. So Sgt Smith Noticed this then called me out the Quad's then sent me Back to my Quad. Later that day I was confronted By Bloods. Two were the Same From Earlier. They then threaten to kill me on the Back Side of the chowhall. officer Bottom who Was standing outside the chowhall Then stepped in And dispersed every AFter going in the chowhall. Later that Night I text my Brother And on the J-Pay kiss Michael And told them that I got into it with Bloods And told them that I was in Fear For my Life, And he said the Solitution. my Brother text me Back and said that he would call out HQ on getting my Text Late. Today 6/11/18 I Informed Sergeant Beach About going thru it with the Bloods And that I was in Fear For my Life. He said the warden, Colonel And major already know and that this is Review to be text Before they go out. And that he Talk is my Little Brother. So Again. Let this witness statement Reflect that I am in Fear For my Life And like to Be placed in P.M.C.

Witness Signature *Michael D. Joslin Jr.*    Date 6/11/2018

Signature of Investigating Officer _____    Date _____

DC6-112C (Revised 5-00)    Original: Inmate File    Copy: Central Office

**FLORIDA DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**DIAGRAM OF INJURY**



Date of occurrence _6/12/18_
Date injury assessed by medical _6/12/18_          Time of occurrence _0415_
☐ No injury identified                              Time injury assessed by medical _0445_

Description of injury:
3 Superficial stab wounds.
1-2 Cm in circumference

_P. Osborne_                    P. OSBORNE, RN
Staff Signature                 GULF C.I./ANNEX

Inmate Name _Toler Michael_
DC# _P21439_                    Race/Sex _B/m_
Date of Birth _3/14/1984_
Institution _Gulf CI_

Copies distribution:  White/Health Record   Canary/Inspector General   Pink/Warden or Asst. Warden

This form is not to be amended, revised, or altered without
approval by the Director of Health Services- Administration.

DC4-708 (Revised 10/07)

Incorporated by Reference in Rule 33-602.210, F.A.C.

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MICHAEL L. TOLER, JR.,
    Plaintiff,



RECEPTION AND MEDICAL CENTER
DATE: 7/21/22
INMATE INITIALS: MLT

V

CASE NO.: 5:22-cv-110-TKW-MJF

SEC., FLORIDA DEPARTMENT
OF CORRECTIONS, *et al.*,
    Defendants.
_____/

**MOTION FOR TO ALLOW EXCESS PAGES IN STATEMENT
OF FACTS SECTION OF THE AMENDED COMPLAINT**

    The Plaintiff, Michael L. Toler, Jr., moves this court for permission to allow a 24-page statement of facts in the Statement of Facts section of the form 1983 complaint he is using to prepare his amended complaint. In support of this motion, Mr. Toler states:

1. Mr. Toler is an inmate in the Florida Department of Corrections.

2. Mr. Toler filed a complaint for damages under 42 U.S.C. §1983.

3. On July 9, 2022, the Court entered an order dismissing Mr. Toler's complaint without prejudice and granted Mr. Toler leave to file an amended complaint. (DK #3)

4. In compliance with the Court's order, Mr. Toler is using the form §1983 complaint adopted by this Court as the form for his amended complaint.


RCV'D USDC FLMD PN
JUL 25 '22 PM 8:02 GM

5. On page 4 of the section entailed "Statement of Facts" in the form §1983 complaint adopted by this Court the following statement appears, *"Barring extraordinary circumstances, no more than five (5) additional pages should be attached  Exhibits attached to the complaint will count as part of your page limitation. "*

6. Mr. Toler's proposed statement of facts consists of 24 typed pages together with seven pages of exhibits for a total of 31 pages.

7. Because of the complex and numerous factual allegations that Mr. Toler is required to make in order to state a cause of action, extraordinary circumstances exists to allow the additional pages in the Statement of Facts.

8. Mr. Toler is not filing this motion for any improper purpose, including undue delay.

9. Because no opposing counsel has made an appearance, Mr. Toler has not contacted opposing counsel to determine if this motion will be opposed.

Wherefore, Mr. Toler moves this Court for permission to file a 24-page statement of facts plus exhibits totaling seven pages in his amended complaint.

Respectfully submitted,

Michael L. Toler, Jr.
DC# P21439
Plaintiff
Reception and Medical Center-Main Unit
P.O. Box 628
Lake Butler FL 32054-0628

2

## Certificate of Service

I CERTIFY that I am an inmate at the Reception and Medical Center-Main Unit. I FURTHER CERTIFY that I placed this document in the hands of the appropriate prison official for mailing by First Class U.S. mail, with postage prepaid by either myself or the Reception and Medical Center-Main Unit, for mailing to the Clerk of the Court, 1 North Palafox Street, Pensacola, Fl, 32502, this _21_ day of July, 2022.

I UNDERSTAND that any false statement(s) of a material fact contained herein may serve as the basis of prosecution and conviction for perjury or making false statements. FURTHER, I DECLARE, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the foregoing is true and correct.

Michael L. Toler, Jr
DC# P21439
Plaintiff

3